COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued at Alexandria, Virginia


DONALD C. McINTYRE

v.          Record No. 0167-95-4        MEMORANDUM OPINION* BY
                                        JUDGE JERE M. H. WILLIS, JR.
GARNET M. McINTYRE                           OCTOBER 3, 1995


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N. A. Kendrick, Judge

             Mary M. Benzinger (Raymond B. Benzinger, on
             brief), for appellant.

             Marcia M. Maddox (Heather A. Dipoma, on
             brief), for appellee.


     On appeal from the trial court's decree of December 22,

1994, granting him a divorce from Garnet M. McIntyre, Donald C.

McIntyre contends the trial court erred (1) in holding the

premarriage agreement void as against public policy, (2) in

refusing to sever the offending language from the premarriage

agreement, (3) in using the date of the equitable distribution

hearing as the valuation date for his pension and cash assets,

(4) in computing the marital share of his pension, (5) in

including the Met Whole Life Policy, and NCSC-IRA and NFCU 005

accounts in the marital estate, and (6) in awarding Ms. McIntyre

permanent spousal support.  We find no error and affirm the

judgment of the trial court.

---

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

## I.  PREMARRIAGE AGREEMENT

Mr. and Mrs. McIntyre were married in September 1978.  Five days prior to their marriage, Mr. McIntyre asked Ms. McIntyre to sign a premarriage agreement.  The premarriage agreement provided the following:

1. SHE shall continue to use her maiden name, Garnet Marie Taylor.

2. HE only shall be responsible for any and all financial liabilities that HE had before the marriage, and for which HE becomes liable during the marriage.

3. SHE only shall be responsible for any and all financial liabilities that SHE had before the marriage, and for which SHE becomes liable during the marriage.

        *    *    *    *    *    *    *

5. SHE shall totally support HERSELF.

6. HE shall have total ownership of all properties, real, personal and intangible that are titled or registered in HIS name, and SHE shall not make claim against such.

        *    *    *    *    *    *    *

9. SHE shall not claim that HE owes HER anything of value at any time.

        *    *    *    *    *    *    *

11. Should HE or SHE want to dissolve this marriage, the parties shall cooperate to expediciously [sic] dissolve the marriage and HE and SHE shall not seek alimony.

Ms. McIntyre brought no significant assets to the marriage.  The premarriage agreement was drafted by Mr. McIntyre.  He did not disclose his assets or their value to Ms. McIntyre before she

signed the agreement.  She had no legal advice before signing, and she was not aware of her rights.

On December 20, 1991, Ms. McIntyre left Mr. McIntyre.  On June 18, 1993, Mr. McIntyre filed for divorce.  On September 27, 1993, Ms. McIntyre filed a motion denying the validity of the premarriage agreement and seeking equitable distribution and spousal support.  The trial court held the premarriage agreement to be void.  It stated, "I believe that if you read the agreement as a whole it is void as being against public policy.  I think also that there is a real question here of the disclosure as to whether or not it is adequate."  We find no error in this holding.

> To render an ante-nuptial agreement valid, there must be a fair and reasonable provision therein for the wife, or -- in the absence of such provision -- there must be full and frank disclosure to her of the husband's worth before she signs the agreement, and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights.

Batleman v. Rubin, 199 Va. 156, 158, 98 S.E.2d 519, 521 (1957).  We followed the holding of Batleman in Carpenter v. Carpenter, 19 Va. App. 147, 449 S.E.2d 502 (1994).

The premarriage agreement made no provision for Ms. McIntyre.  She relinquished all her rights in her future husband's property.  Because she had no knowledge of her future husband's assets, no independent legal advice, and no knowledge of her rights before signing, the agreement is void under

Batleman.

The trial court did not err in refusing to sever the provision contained in Number 11 of the premarriage agreement. The agreement was not severable because as a whole it was void as against public policy.

## II.  VALUATION DATE OF PENSION AND CASH ASSETS

The trial court did not err in valuing Mr. McIntyre's pension and cash assets as of the date of the equitable distribution hearing.  On August 9, 1994, Mr. McIntyre filed a motion to set the valuation date of the property as the date of separation based on Code § 20-107.3(G)(1).

> Code § 20-107.3(A) provides
> upon decreeing a divorce from the bond of matrimony     . . . the court . . . shall determine the legal title as between the parties, and the ownership and valuation of all property . . . .  The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.  Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

Va. Code Ann. § 20-107.3(A).

Mr. McIntyre's motion met the twenty-one day time requirement.  However, Mr. McIntyre failed to show good cause why the valuation date should be the date of separation rather than the date of the evidentiary hearing.  "The value of the assets determined as near as practicable to the date of trial will

usually be the most current and accurate value available." Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 791 (1991) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)).

### III.   COMPUTATION OF MARITAL SHARE OF PENSION

The trial court did not err in computing Ms. McIntyre's marital share of Mr. McIntyre's Air Force pension based on the ratio of years of marriage during service to years of total service.  He testified that the Air Force used a point system rather than a length of service system in determining the accrual of a pension.

Code § 20-107.3(G)(1) defines marital share as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties . . . ." The trial court properly determined the marital share based on the ratio of years of marriage during service to years of total service.  See Mosley v. Mosley, 19 Va. App. 192, 450 S.E.2d 161 (1994).

### IV.   DETERMINATION OF MARITAL ESTATE

The trial court did not err in including in the marital estate, the Met Whole Life Policy, the NCSC-IRA account, and the NFCU 005 account, which Mr. McIntyre asserts are his own separate property.  He argues that the life insurance policy is separate property because it was acquired prior to the marriage and no marital funds were used to pay for it.  The court however, found

that payments totaling $2,274.05 were made on the policy during the marriage, making a portion of the policy marital property. The record supports this finding.

Mr. McIntyre argues that the increase in the NCSC-IRA account was not marital property because the increase was due to income derived post-separation. However, the trial court found that the increase in the shared savings account could be traced to dividend reinvestment. It ruled that "[t]he increases in value of the marital assets that were built up during the marriage should accrue to the benefit of both parties up to the time of the distribution."

Mr. McIntyre argues that the NFCU 005 account is separate property. He contends the account contains the proceeds from the sale of a house owned by him and his first wife. He contends these funds were always maintained separately and as such are separate property under Code § 20-107.3(1)(iii).

The trial court found that the account does contain the proceeds from the sale of Mr. McIntyre's first residence. However, Mr. McIntyre testified that the account was established during his second marriage and that he made mortgage payments on the house during his second marriage. This supports the trial court's finding that the NFCU 005 account is a marital asset.

## V.  SPOUSAL SUPPORT

The court did not err in awarding $1,500 a month permanent spousal support to Ms. McIntyre.  "[I]n awarding spousal support,

the trial court 'must consider the relative needs and abilities of the parties.'" Mosley, 19 Va. App. at 197, 450 S.E.2d at 164 (quoting Collier v. Collier, 2 Va. App. 125, 129, 341 S.E.2d 827, 829 (1986)). "When a [trial] court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination 'will not be disturbed except from a clear abuse of discretion.'" Huger v. Huger, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993) (quoting Poliquin v. Poliquin, 12 Va. App. 676, 679, 406 S.E.2d 401, 403 (1991)). The trial court found (1) Ms. McIntyre had a high school equivalency degree (GED), while Mr. McIntyre had a master's degree and credits toward a doctorate, (2) Ms. McIntyre had numerous physical ailments for which she had undergone surgery, (3) Ms. McIntyre's monthly income was $414 from her civil service pension, of which the court awarded Mr. McIntyre 50% of the 97% marital share; Ms. McIntyre had contributed substantially to Mr. McIntyre's career, placing her career second; and Mr. McIntyre had a monthly income of $6,746. This supports the award of spousal support under Code § 20-107.1.

We affirm the judgment of the trial court.

Affirmed.